MANUFACTURERS CASUALTY INSURANCE CO., a corporation, Plaintiff,

v.

SHO-ME POWER CORPORATION, a corporation, Defendant.

No. 1461.

United States District Court
W. D. Missouri, S. D.

Dec. 30, 1957.

Turner White, III, of Chinn & White, Springfield, Mo., G. F. Branigin, Franklin, Ind., for plaintiff.

Gregory S. Stockard of Stockard & Stockard, Jefferson City, Mo., Robert L. Gideon of Gideon & Mahnkey, Branson, Mo., for defendant.

**R. JASPER SMITH, District Judge.**

This is an action brought by plaintiff as assignee of Boyd Lemley, doing business as Franklin Electric Company, to recover from defendant $19,350, or so much thereof as was not offset by proved damages, withheld by defendant under the provisions of a contract between Lemley and defendant, by which defendant was to retain as liquidated damages the sum of $100 per day for each day Lemley delayed completion of an electric transmission line to be constructed for defendant.

The contract was dated July 14, 1950, and called for the construction of a 69,000 volt electric transmission line of approximately 63.9 miles in length, extending from Lebanon, Missouri, to Rolla, Missouri, for a total contract price of $379,136.23. Construction was to begin on October 6, 1950, and was to be completed within 120 calendar days, with additional time to be allowed for certain specified contingencies. As a result of these contingencies additional completion time of 100½ days was allowed Lemley, but construction required a total of 414 days. Lemley thus used 193½ days over and above the allowed time to complete construction of the electric line, and defendant withheld from the amount due on the contract the sum of $19,350. Except for this amount, defendant has paid to Lemley, or to plaintiff as his assignee, all amounts provided for by the contract.

Article VI, Section 3, of the contract provided in part as follows:

"Section 3—Liquidated Damages. The time of the completion of the construction of the project is of the essence of this contract. Should the contractor neglect, refuse or fail to complete the construction within the time herein agreed upon, after giving effect to extensions of time, if any, herein provided, then in that event and in view of the difficulty of estimating with exactness damages caused by such delay, the owner shall have the right to deduct from and retain out of such moneys which may be then due, or which may become due and payable to the contractor, the sum of One Hundred Dollars ($100.00) per day for each and every day that such construction is delayed in its completion beyond the specified time, as liquidated damages and not as a penalty: * * * "

Plaintiff urges, and this action is predicated upon the premise that, the provision quoted here from the contract calls for a penalty rather than liquidated damages and as such is unenforceable and void under Missouri law; that plaintiff, therefore, is entitled to recover the amount withheld, less any actual damages sustained by defendant.

By stipulation it is shown that defendant was required to pay its engineer the sum of $4,837.50 and to pay Union Electric Company $542 for electric current. These items are conceded to be damages to defendant resulting from the default of Lemley. No other specific items of damages were proved, although defendant contends that it was damaged in other ways. Plaintiff on the other hand contends there was no additional damage and claims a right to recover the difference between the two items and the $19,350 with interest thereon from November 1, 1951.

Defendant is the sole supplier of electric power and energy at retail and wholesale in a large portion of the South Central part of the State of Missouri. Its customers include numerous municipalities and rural electric cooperatives at wholesale, and numerous individuals at retail; and it has electric service extending into urban areas, manufacturing establishments, homes, and commercial establishments in its area. It operates under the general supervision of the Missouri Public Service Commission and the approval of that Commission was requisite to the construction of the line in question. Thus defendant is a public utility and as such is clothed with many of the responsibilities and authorities of public corporations generally.

In order to supply adequately the needs for electric energy to the area in question, it became necessary for defendant to construct the line in question and to replace in part and relieve in part an existing but inadequate electric line.

The record shows that subsequent to the time the electric line was to have been completed, defendant had numerous long outages on the existing electric line which would have been replaced or relieved by the new line, and there was testimony that these outages would have been eliminated or substantially reduced in duration if the electric line had been constructed on time. The record indicates that these outages could have serious effect on water supply, fire protection, lights, and disposal plants in defendant's area.

There was evidence on behalf of plaintiff that the line actually was not useable regardless of Lemley's default until some time had elapsed after actual construction because of defendant's failure to provide substations, and there was other evidence on behalf of the plaintiff that some of the delays resulted from defendant's own interference with the construction through failure to obtain right-of-way and like matters. No additional time was requested under the contract for these items and no complaint is made by plaintiff of defendant's failure to grant additional extensions of time.

Although under general Missouri law each case is to be determined on its own facts (Thompson v. St. Charles County, 227 Mo. 220, 126 S.W. 1044), there are many rules of construction which govern in consideration of these problems.

First of all it is recognized that the particular type of contract used here is quite common, and is generally recognized and used in the construction business, and is peculiarly appropriate when the stipulated damages are graded according to the extent of the breach, increasing proportionately with each day's delay. See 3 Williston, Contracts, Rev. Ed. Sec. 785. When the damages are uncertain in nature or amount or are difficult of ascertainment and the amount agreed on is not extravagant and unreasonably disproportionate to the damages that actually resulted from a breach of the contract, the contract provision is upheld. 25 C.J.S. Damages § 101a, Buchanan v. Louisiana Purchase Exposition Co., 245 Mo. 337, 149 S.W. 26.

684

■■ Of course there can be no question of the right of parties to a contract to agree among themselves what the damages should be in the event of a breach. See the old case of Morse v. Rathburn, 42 Mo. 594, with its many subsequent citations. Hence, in determining whether a provision in a contract provides for a penalty or liquidated damages the intention of the parties in each case, measured from the time the contract was executed and not from hindsight after the performance is completed, is the test to be applied. Wilt v. Waterfield, Mo., 273 S.W.2d 290, 295, Yerxa, Andrews & Thurston v. Randazzo Macaroni Mfg. Co., 315 Mo. 927, 288 S.W. 20, Blackwood v. Liebke, 87 Ark. 545, 113 S.W. 210.

■ It follows, therefore, that where the stipulation of the contract provides a method for determining liquidated damages, the burden of establishing the contract provision to be a penalty properly is on the party urging it. 25 C.J.S. Damages § 102 a, Wilt v. Waterfield, supra.

■ Defendant and Lemley were certainly competent to contract in the exercise of their own judgment; and contracts made by parties who are under no compulsion beforehand relating to the amount of damages which are allowed for a breach are as lawful as any others unless they are proscribed by some of the established rules of law. Courts will not enforce stipulations for liquidated damages where the stipulated sum to be paid is unreasonable or oppressive, or where it is established that it is in fact a penalty and not an agreement as to simple damages. Courts properly will enforce those contracts as made where they do not conflict with the declared public policy of the state. See Wilt v. Waterfield, supra, Thompson v. St. Charles County, supra.

■ Here the provision of the contract has reference to uncertain damages. Serious damage might have been incurred. Where a public corporation is involved the convenience of the beneficiaries of the service may be considered, and that damage cannot be measured in dollars. Thompson v. St. Charles County, supra. The loss of good will of defendant itself may be considered and that element can be measured in dollars only generally, and with great difficulty. May v. Crawford, 142 Mo. 390, 44 S.W. 260.

It seems perfectly clear, notwithstanding plaintiff's claim that no damage of any kind actually resulted, that there actually are items of damage to defendant and to the public which are difficult and in fact impossible to ascertain. Here the parties agreed that the damages were difficult to ascertain. It seems clear that those damages could not be calculated with any degree of certainty. The contract was made by defendant for the purpose of promoting the convenience and welfare not only of itself but of the public generally, and it is certainly beyond question that there could be no estimate of damages or compensation for the inconvenience to the public or damage resulting from a failure to complete the contract as agreed.

■ Plaintiff can hardly maintain its position that no damage should be allowed in this case because other work was not completed when this line was actually finished and the line could not be used. Neither the intention of the parties nor the construction of the contract can depend upon what happened afterwards which was not reasonably contemplated at the time of the execution of the contract. If the rule as contended by plaintiff prevailed and if there was a similar stipulation in every contract, the argument would lead to the conclusion that each one would say that nothing could be deducted under any contract because someone else had not performed. The law will not permit that interpretation. Parker-Washington Co. v. City of Chicago, 267 Ill. 136, 107 N.E. 872.

■ Here we have a contract for $379,136.23. Actual damage in the amount of $5,379.50 has been proved and is agreed. $13,970.50 representing an agreed damage for the intangible unprovable items resulting from a delay of 193½ days is not so unreasonable, so ex-

orbitant, so oppressive as to justify a court in disregarding the clear intention of the parties at the time the contract was executed.

I must conclude that the provision relating to liquidated damages is valid and enforceable, that plaintiff has failed to discharge its burden to demonstrate otherwise, and plaintiff is not entitled to the relief it seeks here. Judgment will be entered for the defendant. It Is So Ordered.