GEORGE W. TARR, Appellant, *vs.* J. W. STEARMAN,
Appellee.

*Opinion filed June 16, 1914.*

1. FORFEITURE—*court of equity will never affirmatively enforce
a forfeiture or penalty.* A court of equity will not affirmatively
enforce a forfeiture at the suit of the party entitled thereto but
will leave him to his legal remedies, if any, even though the case
may be one in which no equitable relief would be given the de-
faulting party against the forfeiture.

2. SAME—*the question of jurisdiction of equity to affirmatively
enforce a forfeiture cannot be waived.* The question of the ju-
risdiction of a court of equity of a bill to affirmatively enforce a
forfeiture cannot be waived by failure to raise the objection by
answer or demurrer, as the subject matter of such a bill is wholly
foreign to equity jurisdiction.

3. CONTRACTS—*contracts in partial restraint of trade may be
valid.* Contracts in partial restraint of trade may be valid if they
are reasonable as to time, place, terms, etc., and manifest an in-
tention to protect the party relying upon the covenant in the rea-
sonable restraint of unjust discrimination against him.

4. SAME—*when reasonableness of contract as between the par-
ties is no test of its validity.* Even though a contract in partial
restaint of trade be fair and reasonable as between the parties, yet
if it is so injurious to the public interests that public policy re-
quires that it shall not be enforced it will be declared void.

5. SAME—*in construing contracts in partial restraint of trade
the interests of the public are paramount.* Every contract in par-
tial restraint of trade must be judged according to its own special
circumstances, and the question whether it is reasonable or is con-
trary to public policy is one of law; but in construing such con-
tracts the interests of the public must be held paramount.

6. SAME—*when a party will be held to strict interpretation of
language used.* One who complains of an infraction of a contract
in restraint of trade will be held to a strict interpretation of the
language used in the agreement.

7. SAME—*when contract in partial restraint of trade is void.*
A contract between the proprietor of a dental establishment, who
was not a licensed dentist, and the licensed dentist employed by
him to run the business, is void as against public policy, where it
provides that such licensed dentist, after he ceases to be connected
with the other party, will never, without the latter's written con-

sent, practice dentistry, directly or indirectly, on behalf of himself or others, in the particular city where the business is located or within twenty-five miles thereof.

8. EQUITY—*when court of equity cannot retain jurisdiction to determine a controversy.* If the allegations of a bill which authorized the court to take jurisdiction are not proved and no relief as to them is decreed, the court cannot retain jurisdiction of another branch of the case which, standing alone, it has no jurisdiction to hear and determine.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

SIDNEY S. BREESE, BARBER & BARBER, and ROBERT A. HOLLAND, JR., for appellant.

ROY M. SEELEY, and E. L. CHAPIN, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant, George W. Tarr, filed a bill in the circuit court of Sangamon county to restrain appellee from managing, controlling, taking and retaining possession of a dental business at a certain location in the city of Springfield, and to restrain appellee from preventing appellant or his agent from taking sole and exclusive possession, control and management of said business and from retaining possession of the personal property used in said dental business, and further praying that appellee be restrained from engaging, directly or indirectly, in the practice of dentistry in Springfield, or within twenty-five miles thereof, without the written consent of appellant. A temporary injunction was issued. After an answer was filed by appellee the cause was referred to a master, who reported that under the facts and circumstances shown in evidence the restraining order should not be enforced against appellee

as to practicing dentistry in Springfield or within twenty-five miles thereof, and that as to the other matters alleged in the bill appellant had an adequate remedy at law, and recommended that the bill be dismissed for want of equity. On the hearing on this report the chancellor sustained the exceptions of appellant to the findings that he had an adequate remedy at law and that the bill should be dismissed for want of equity, and entered a decree in accordance with the prayer of the bill in that regard but sustained the master's finding that appellee should not be restrained from the practice of dentistry in Springfield or vicinity. On an appeal to the Appellate Court the decree of the circuit court was reversed and the cause remanded, with directions to dismiss the bill for want of equity. A certificate of importance having been granted, the cause has been appealed to this court, appellee filing cross-errors.

In August, 1909, one Charles J. Tarr, of St. Louis, Missouri, who was engaged at that time in renting and equipping dental offices and employing licensed dentists to run them, opened a dental office in Springfield, Illinois, under the name of "Eastern Dentists," employing appellee, who was a licensed dentist, to run the office at a salary of $30 per week. In November, 1909, appellant, George W. Tarr, then a resident of St. Louis but who has since removed to Minneapolis, purchased said dental office from his brother, said Charles J. Tarr. Appellant was in the same business as his brother,—renting and equipping dental offices and employing licensed dentists to run them. After purchasing said dental office appellant continued to employ the appellee to run said office at $30 per week until January 1, 1910, when the written contract here in question was executed between appellant and appellee. This contract stated that appellant, as party of the first part, being the "owner of a certain dental business conducted under the name of 'Eastern Dentists,'" desiring to secure the services of appellee, party of the second part, in connection

with the management of said business, it was agreed between the parties that beginning on said January 1 the first party would employ the second party to manage said dental business for a period of fifty-five months; that "said party of the second part shall be paid for his services as follows: During the first, second, third and fourth month, to-wit, February, March, April and May, 1910, out of the receipts of the said business, on or before the fifth of said month, all expenses connected with the running of said business of the previous month shall be paid," and out of the balance that may remain the party of the second part was to pay the first party, on or before the fifth day of said months, the sum of $40. After the expenses and said $40 were paid, the balance of the earnings of the said business during the preceding month was to be paid to the second party as compensation for his services during the preceding month. For the next forty-nine months the payment to appellant was to be $50 per month, and for the fifty-fourth month the appellee was to pay $85 to appellant. It was further provided that after paying out of the income the expenses for said month and also the allowance to the appellant, whatever balance there was from the earnings should be paid to second party for his services for said month, but if there should be no such balance, then the appellee should receive no compensation whatever for his services for said month. The contract then provided:

"The general policy of the management of said business shall be determined by said party of the first part, provided that said party of the second part shall not be required to spend more than $40 a month for advertising, which sum, in each month, the party of the second part will spend.

"The said party of the second part further agrees that so long as he is connected with said party of the first part under this contract he will never, in the city of Springfield, Illinois, or within twenty-five miles thereof, directly or in-

264 — 8

directly, in behalf of himself or in behalf of others, engage in the practice of dentistry except as an employee of said party of the first part.

"Said party of the second part further agrees that after he ceases to be connected with said party of the first part under this contract, whether said relation is terminated by expiration of contract or otherwise, he will never, in the city of Springfield or within twenty-five miles thereof, be engaged, directly or indirectly, in behalf of himself or in behalf of others, in the practice of dentistry, or be in any wise connected with any dental concern, without written consent of said party of the first part.

"Neither while this contract is being performed or after it has been faithfully performed by the party of the second part, shall the party of the first part, in the city of Springfield, Illinois, or within twenty-five miles thereof, engage, either directly or indirectly, in behalf of himself or others, in the practice of dentistry, or be in any way connected with any dental concern, without the written consent of the party of the second part.

"It is further agreed between the parties that if at any time said party of the second part shall so conduct said business that the receipts of said business during any given month shall be insufficient to pay the expenses of said month and to pay said party of the first part the allowance mentioned in this contract in the manner above provided, said party of the first part shall have the privilege of terminating said contract by giving said party of the second part twenty days' notice of his intention to terminate the same.

"It is further agreed between the parties hereto that if said party of the second part shall well and truly perform all of the agreements of this contract by him to be performed, that said party of the first part, at the end of fifty-four months, will, as a reward for faithful services, convey to the said party of the second part, by proper instrument, the entire business of said Eastern Dentists being conducted

at 504 East Main street, in the city of Springfield, Illinois, or at any other office in said city to which said business may be removed, and that by such instrument said party of the first part will convey to said party of the second part the good will of said business in Springfield, Illinois, the right to use the said name of Eastern Dentists in Springfield, and also a clear title to the personal property, furniture, tools, etc., being at said time in said business in the city of Springfield, Illinois, and the conveyance of said property rights shall be free and clear of any and all mortgages and liens whatsoever. It is further understood between the parties that said party of the second part shall have no right whatever to the conveyance of said business or said property unless he shall fully and faithfully perform the agreements of this contract. * * * But it is understood between the parties that said party of the second part shall have no right, during his life, to assign this contract, or any of the rights thereunder, to any other party without the written consent of said party of the first part."

The master found, among other things, that at the time the injunction was served and appellant took possession of the offices there were left therein material and fixtures of the value of $1400 which had been purchased by appellee out of the profits of the business; that appellee had paid all the expenses of said office and had paid appellant $1210 in installments under the contract but had failed to pay four installments of $50 each, and was therefore indebted at that time to appellant in the sum of $200; that the business had been so conducted that the receipts thereof were sufficient each month to pay expenses and pay appellant the installments due under the contract but that the increased expenses of appellee had prevented him from paying the four installments; that the failure to pay said four installments was the only breach of the contract on the part of appellee up to the time of the service by appellant

of notice that the contract was forfeited; that no evidence was introduced on the question of the insolvency.

The bill seems to have been filed on the theory that this contract was one of employment. Previous to the filing of the bill appellant had served written notice upon appellee that his services had not been satisfactory, and that on account of several breaches of said contract and the failure during said four months to so conduct said business as to pay expenses and the installments due, appellant had determined to terminate the relationship existing between them and end said contract.

One of the principal points of discussion in the briefs of counsel is whether the contract is one of employment or a conditional sale. It partakes somewhat of the features of both. We are of the opinion, however, that the primary feature of the contract is that of a conditional sale. In view of the conclusion that we have reached that the bill is filed to enforce the forfeiture of the contract, it is not essential to decide whether or not this is a contract of employment or a conditional sale. Courts of equity, as well as courts of law, recognize the rights of the parties to a contract to stipulate for penalties and forfeitures, but it is a rule of universal application that courts of equity will never affirmatively enforce either a penalty or a forfeiture. (2 Story's Eq. Jur.—13th ed.—sec. 1319; 16 Cyc. 80.) It is a well settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture. The few apparent exceptions to this doctrine are not real exceptions. In fact, there are no exceptions. Those which appear to be so all depend upon other rules and principles. (1 Pomeroy's Eq. Jur.— 3d ed.—secs. 459, 460.) Equity does not favor forfeitures and will never lend its aid actively to enforce them, but

will leave the parties to their remedy at law. (2 Beach on Modern Eq. Jur. sec. 1013; Bispham's Principles of Equity,—7th ed.—sec. 181; *Worthington* v. *Moon,* 53 N. J. Eq. 46.) Though a court of equity will not generally relieve against a forfeiture, it will "never lend its assistance in the enforcement of one." (*O. C. R. R. Co.* v. *A. & G. W. R. R. Co.* 57 Pa. St. 65.) In *Harlev* v. *Sanitary District,* 226 Ill. 213, this court stated (p. 225) : "Equity will not interpose to enforce or carry into effect a forfeiture." The same rule, in effect, was laid down by this court in *Douglas* v. *Union Mutual Life Ins. Co.* 127 Ill. 101, *Toledo, St. Louis and New Orleans Railroad Co.* v. *St. Louis and Ohio River Railroad Co.* 208 id. 623, and *Moore* v. *Martin,* 233 id. 512.

Counsel for appellant contend, however, that the question of jurisdiction of a court of equity to hear this matter was not raised by answer or demurrer and therefore was waived. The rule is, that if the subject matter of the bill of complaint is wholly foreign to the jurisdiction of a court of chancery it will be denied even though the defendant has submitted himself to the jurisdiction of the court, but if the subject matter belongs to that class of which a court of equity will take jurisdiction, an objection that there is an adequate remedy at law should be taken at the earliest opportunity. (*Law* v. *Ware,* 238 Ill. 360, and cases cited.) "If the decree of the circuit court, in its nature, enforces a penalty or forfeiture it cannot be sustained." (*Bucklen* v. *Hasterlik,* 155 Ill. 423.) This case is one in which a court of equity cannot take jurisdiction, for "equity never, under any circumstances, lends its aid to enforce a forfeiture or penalty or anything in the nature of either." *Marshall* v. *Vicksburg,* 82 U. S. 146.

Counsel for appellant further contend that a court of equity had jurisdiction to enjoin appellee, on the termination of the contract by forfeiture or otherwise, from en-

gaging in the practice of dentistry, either directly or indirectly, in the city of Springfield or within twenty-five miles thereof. It has always been the policy of the law to promote the freedom of engaging in and carrying on all kinds of trades and professions which are beneficial to the public. (2 Pomeroy's Eq. Jur.—3d ed.—sec. 934.) Formerly, by the common law all contracts in restraint of trade were void. (24 Am & Eng. Ency. of Law,—2d ed.—842.) The law on this subject has undergone changes and the authorities at the present time are not in harmony. (2 High on Injunctions,—4th ed.—sec. 1167; *Allen Manf. Co.* v. *Murphy,* 20 Ann. Cas. [Ont. L.] 657, and note.) It is sometimes said that equity is loath to enforce a contract in restraint of trade, even though it be good law, if the terms are harsh or complex. (Bispham's Principles of Equity,— 7th ed.—sec. 227.) The authorities now generally agree that contracts in partial restraint of trade are valid if reasonable as to time, place, terms, etc., and manifest an intention to protect the party relying upon the covenant in the reasonable restraint of unjust discriminations against him. (*Southern Fire Brick Co.* v. *Sand Co.* 223 Ill. 616.) The reasonableness of such contracts, as between the parties, is the test in those cases only where the public interests, also, are not involved. Even though a contract be fair and reasonable between the parties, yet if it is so injurious to the public interests that public policy requires that it should not be enforced it will be held void. *Fowle* v. *Park,* 131 U. S. 88; 9 Cyc. 533.

Two paragraphs of this contract relate directly to the restriction upon appellee to practice dentistry in Springfield or within twenty-five miles thereof. The closing part of the last paragraph quoted refers indirectly to it in forbidding appellee to assign the contract. Every contract of this kind must be judged according to its special circumstances, and whether it is reasonable or contrary to pub-

lic policy is a question of law. (*Lanzit* v. *Sefton Manf. Co.* 184 Ill. 326.) A contract which is only in partial restraint of trade will be held valid if it is reasonable and has a valuable consideration to support it. (*Hursen* v. *Gavin,* 162 Ill. 377.) In such cases the adequacy of the consideration is not a question for the courts. (*Ryan* v. *Hamilton,* 205 Ill. 191.) In construing all such contracts, however, the interests of the public must be held paramount. In all such contracts the law has regard not only to the financial profits to be made from trades or professions, but the convenience of the public as well. The convenience of a given community or locality will be promoted if every such locality has its proper accommodation and service from every art, trade and profession, hence the authorities generally state that a contract in restraint of trade or profession in any given locality will not be upheld unless it is shown that the place of such individual so restrained is to be supplied by some other person of the same trade or profession. The public have an interest in and a right to the skill of appellee in the business, trade or profession in which he is the most successful or useful. (*Lanzit* v. *Sefton Manf. Co. supra; Lawrence* v. *Kidder,* 10 Barb. 641.) Appellant is not licensed and cannot practice dentistry in Illinois in the place of appellee. One of said paragraphs provides that "after he [appellee] ceases to be connected with said party of the first part under this contract, whether said relation is terminated by expiration of contract or otherwise," he will never practice, directly or indirectly, on behalf of himself or others, in Springfield or vicinity. The obvious meaning of this section is, that even though appellee makes all payments and performs all the conditions, and after appellant has conveyed the property and business to him, yet he can never practice dentistry within the limited territory. This paragraph is repugnant to the other provisions of the contract, but counsel for appellant contend that that paragraph, read in connection with

the rest of the contract, should be construed as meaning that after the contract has been completed according to its terms and the business and equipment assigned by appellant to appellee, the former has thereby given his written consent to appellee to practice dentistry within the limited locality. The party complaining of an infraction of a contract in restraint of trade will be held to a strict interpretation of the language of the agreement. (*Wiggins Ferry Co.* v. *Ohio and Mississippi Railway Co.* 72 Ill. 360.) So construed, we think all of the provisions of this contract relating to this question must be held unreasonable and void.

Appellant further contends that a court of equity, having acquired jurisdiction for the purpose of settling the question whether this provision of the contract can be enforced by injunction, may retain jurisdiction for all purposes and determine all the rights and controversies, even though legal rights are involved which otherwise could be only enforced in a court of law. Allegations in a bill upon which chancery jurisdiction might be maintained but which are not proved on the trial and upon which no relief is decreed, will not authorize a decree on such parts of the bill which, if standing alone, would not give the court jurisdiction. 12 Ency. of Pl. & Pr. (2d ed.) 165; *Toledo, St. Louis and New Orleans Railroad Co.* v. *St. Louis and Ohio River Railroad Co. supra.*

Appellee not having filed a cross-bill, no affirmative relief can be granted him on his cross-errors, even if it be conceded he is entitled to such relief. *Traders' Ins. Co.* v. *Race,* 142 Ill. 338; *Jackson* v. *Sackett,* 146 id. 646.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*