David B. Grounds, Appellant, v. E. M. VanLaningham and Loren Combs, Appellees.

Gen. No. 8,356.

Opinion filed February 3, 1930. Rehearing denied April 4, 1930.

RAYMOND G. REAL, for appellant.

CRAIG & CRAIG, for appellees.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

Appellant filed his bill of complaint in equity in the city court of the City of Mattoon, Coles county,

Illinois, on February 4, 1929, praying for an injunction against appellees, prohibiting them from operating a clothes cleaning and pressing establishment in the said City of Mattoon or within 10 miles of said city for a period of 10 years. Application was made by appellant for a temporary injunction, which was granted.

Appellees, at the March term, A. D. 1929, filed a general demurrer to the bill of complaint and also filed a motion to dissolve the temporary injunction. The court sustained the demurrer to the bill, allowed the motion to dissolve the temporary injunction and dismissed the bill for want of equity. Appellant prayed for and was allowed an appeal and the lower court ordered that the temporary injunction should remain in effect until the disposition of the appeal.

The bill filed in this cause alleged that on July 31, 1928, appellant and appellees entered into an agreement, a copy of which was attached to the bill, by which appellant sold to appellees a cleaning and pressing business in the City of Mattoon, Illinois, together with certain specified chattel property used in connection therewith, which said chattel property is described in said contract and agreement; that in addition to the sale of said cleaning and pressing business and such chattel property, appellant leased to appellees a business property owned by him and located at 2008 Prairie Avenue in the City of Mattoon, Illinois, for which property appellees agreed to pay to appellant the sum of $100 per month from December 1, 1928, said rent to be due in advance on the first day of each and every month; and that appellant performed all the covenants of said contract to be performed on his part, in accordance with the terms and conditions of said contract.

The bill further alleged that appellees in and by said contract stipulated and agreed that in case of

the breach of any term of said contract by appellees, and their rights under and by virtue of said contract were forfeited by appellant, then and in such event appellees would not enter the cleaning and pressing business within the City of Mattoon, Illinois, or within 10 miles of the corporate limits of the City of Mattoon, Illinois, for a period of 10 years, commencing on the first day of August, A. D. 1928; that on February 1, 1929, there was due from the appellees as rent for the foregoing premises the sum of $100, and that appellees failed to pay said rent when the same was due and appellees thereupon advised the appellant that they were not going to pay said rent and were going to default under the terms of their contract. They thereupon turned over to appellant the keys to the property owned by him and located as aforesaid at 2008 Prairie Avenue in the City of Mattoon, Illinois, and appellant thereupon took possession of the said premises. The appellees thereupon terminated their possession of said premises, the appellant has proceeded to and has forfeited the rights of the appellees under and by virtue of their contract aforesaid, and appellant has foreclosed all the right, title and interest of the appellees in and to the property sold to them by appellant under and by virtue of said contract.

The bill further alleged that appellees are operating a cleaning and pressing establishment at 1409 Broadway Avenue in the City of Mattoon, Illinois, in violation of the covenants of their contract and agreement as aforesaid, and that as a result of the conducting of said cleaning and pressing business by appellees in violation of their said contract, the business of appellant located at 2008 Prairie Avenue in the City of Mattoon, Illinois, is greatly damaged and irreparable injury will be caused to appellant if appellees are permitted to continue the conducting of their

cleaning and pressing business in the City of Mattoon, Illinois, in violation of said contract.

The bill prayed that appellees might be enjoined from engaging in the clothes cleaning and pressing business, either directly or indirectly in the City of Mattoon, Illinois, or within 10 miles of the corporate limits of the City of Mattoon, Illinois, at any time within 10 years from the first day of August, 1928.

In support of the demurrer to the bill and the motion to dissolve the temporary injunction, it is contended by appellees that appellant was entitled to no relief in equity for the following reasons:

First. The contract provides that if second parties make default in any of the terms of the contract and second parties thereupon foreclose their interest in the business and equipment thereby sold to them, then, in such event, second parties will not re-enter the clothes cleaning business, etc.

It is argued that this provision is meaningless, as "second parties could not foreclose their own interest," etc. We regard the use of the term "second parties" in place of "first party" as a mere clerical error and cannot agree with appellee's contention.

It is further contended that the whole contract is so harsh and inequitable that equity will refuse to enforce it by injunction; that appellant, in his bill, did not offer to do equity, as it contained no allegation of a return or offer to return the balance of appellee's notes given as the purchase price of the property, totaling $9,495.80; that the covenant not to re-enter the clothes cleaning business is a penalty or forfeiture provided in the contract if appellees default, which equity will not enforce, and it is further contended that the paragraph in the contract which provides that if second parties make default under this contract they will not sell to anyone operating a clothes cleaning plant in the City of Mattoon, or to anyone intending to operate such a plant, any of

the equipment used by second parties in the clothes cleaning business at Mattoon, is illegal and void because it is unlimited as to time, and also illegal as tending to prevent competition and being against public policy, and this paragraph being invalid the whole contract must be held invalid under the rule that where valid provisions of a contract are blended with invalid provisions the whole contract will be held invalid.

An analysis of the contract shows that Grounds, appellant, who had run a cleaning and pressing establishment in Mattoon for several years, sold the said business to appellees for a consideration of $10,600, the same to be paid for by appellees in monthly instalments of $220.84 each, during 48 months, with interest thereon at the rate of 6 per cent per annum, the same to be secured by chattel mortgage covering all of the property, and represented by 48 notes falling due monthly. Appellant also leased the real estate to appellees for a period of 5 years at a monthly rental of $100, all of which provisions were contained in the same contract. The chattel mortgage was to cover further: "Such other chattel property as second parties, appellees, are about to install in the premises." Appellant was to place the premises in tenantable shape and in case the covenants were carried out, appellant agreed that he would not enter the clothes cleaning business, directly or indirectly, in the City of Mattoon or within 10 miles of the corporate limits for a period of 10 years. In consideration thereof, appellees agreed that upon default made by them appellant could foreclose their interest in the business and equipment sold to them, and in such event appellees covenanted that they would not within 10 years from default re-enter the clothes cleaning business, directly or indirectly, in the same territory, Mattoon or within 10 miles of the corporate limits of said city. It was further agreed and covenanted that in case appellees made any default, either in the payment of any note

or interest or rent, or in keeping the premises tenantable, that if any such default occurred that the damages which the first party would sustain as the result of such breach, were very indefinite and difficult of ascertainment, and "second parties therefore agree that any payments that may have been made upon this contract shall be kept by first party as such liquidated damages, in case second parties default in any manner," and appellant was given the right to forfeit the contract and foreclose. It was further agreed that in case the second parties made default that "they will not sell to anyone operating a clothes cleaning plant in the City of Mattoon, Illinois, or to anyone intending to operate such a plant, any of the equip-ment used by second parties in the clothes cleaning business in Mattoon, Illinois." To the latter clause there was no limitation as to time. Under the terms of this contract, appellant, the seller, received the full purchase price of his property in the notes and chattel mortgage, amounting to the sum of $10,600, and the covenant to pay rent, and appellant has agreed in the contract that for any default on the part of appellees appellant shall retain and keep all payments made as liquidated damages. It is plain to be seen that the resulting injury and damage to appellant by reason of any default on appellees' part was not made an equation in the value of the property and did not enter into the question of consideration for which the property was sold. That appellant may be injured by the default of appellees in the value of the property or in the good will and success of the established business which he had run, while not a question in this case, is not to be denied, but under the provisions of this contract such loss and damage is protected only by a provision standing independently and alone in the contract, based upon no monetary or property consideration, covenanting not to engage in a similar business in a defined territory, which becomes in law a mere

penal clause or forfeiture of rights. This possible loss or damage might have been protected by a bond or other security. Appellant may have some other remedy but it is elementary that a court of equity will not aid him to enforce a mere penalty or forfeiture.

In *Tarr v. Stearman,* 264 Ill. 110, 116, the court held: "Courts of equity, as well as courts of law, recognize the rights of the parties to a contract to stipulate for penalties and forfeitures, but it is a rule .of universal application that courts of equity will never affirmatively enforce either a penalty or a forfeiture. (2 Story's Eq. Jur.—13th. ed.—sec. 1319; 16 Cyc. 80.) It is a well settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture. The few apparent exceptions to this doctrine are not real exceptions. In fact, there are no exceptions. Those which appear to be so all depend upon other rules and principles. (1 Pomeroy's Eq. Jur.—3d ed.—secs. 459, 460.) Equity does not favor forfeitures and will never lend its aid actively to enforce them, but will leave the parties to their remedy at law. (2 Beach on Modern Eq. Jur. sec. 1013; Bispham's Principles of Equity—7th ed.—sec. 181; *Worthington v. Moon,* 53 N. J. Eq. 46.) Though a court of equity will not generally relieve against a forfeiture, it will 'never lend its assistance in the enforcement of one.' (*Ohio C. R. R. Co. v. A. & G. W. R. R. Co.,* 57 Pa. St. 65.) In *Harlev v. Sanitary District,* 226 Ill. 213, this court stated (p. 225): 'Equity will not interpose to enforce or carry into effect a forfeiture.' The same rule, in effect, was laid down by this court in *Douglas v. Union Mutual Life Ins. Co.,* 127 Ill. 101; *Toledo, St. Louis and New Orleans Railroad Co. v. St. Louis & Ohio River Railroad Co.,* 208 id. 623, and

*Moore v. Martin,* 233 id. 512. . . . 'If the decree of the circuit court, in its nature, enforces a penalty or forfeiture it cannot be sustained.' (*Bucklen v. Hasterlik,* 155 Ill. 423.) This case is one in which a court of equity cannot take jurisdiction, for 'equity never, under any circumstances, lends its aid to enforce a forfeiture or penalty or anything in the nature of either.' *Marshall v. Vicksburg,* 82 U. S. 146.'' To the same effect are *Launtz v. Vogt,* 133 Ill. App. 255, 258; *Toledo, St. L. & N. O. R. R. Co. v. St. Louis & Ohio R. R. Co.,* 208 Ill. 630; *Douglas v. Union Mut. Life Ins. Co.,* 127 Ill. 101, 116; *Calame v. Paisley,* 296 Ill. 618, 623. *Tarr v. Stearman, supra,* in all respects is very similar to the case at bar.

In *Victor Chemical Works v. Iliff,* 299 Ill. 532, 551, the court said: ''To award the injunction prayed for in this case would amount to compelling specific performance. An injunction against the breach of any negative covenant in any case is, in effect, enforcing specific performance.'' In all of these cases it runs into the questions of partial restraint of trade, the reasonableness of the contract and whether the contract has a valuable consideration to support it. (*Tarr v. Stearman, supra; Hursen v. Gavin,* 162 Ill. 377, 380.)

In *Tarr v. Stearman, supra,* it was further held: ''In all such contracts the law has regard not only to the financial profits to be made from trades or professions, but the convenience of the public as well. The convenience of a given community or locality will be promoted if every such locality has its proper accommodation and service from every art, trade and profession, hence the authorities generally state that a contract in restraint of trade or profession in any given locality will not be upheld unless it is shown that the place of such individual so restrained is to be supplied by some other person of the same trade

or profession. The public have an interest in and a right to the skill of appellee in the business, trade or profession in which he is the most successful or useful."

It is contended by appellees that the clause in the contract by which the appellees bind themselves perpetually never to sell to anyone operating a clothes cleaning plant in Mattoon, or to anyone intending to operate such a plant, any of the equipment used by second party in the clothes cleaning business in Mattoon, in case of their default, is unlimited as to time and therefore unreasonable and void. Inasmuch as there was a limit of time during which a default could occur, we cannot agree with appellees' contention.

Appellees contend that appellant in his bill does not offer to do equity; that in and by the said bill appellant has not offered to return the $9,495.80 of unpaid notes and has not returned them; that according to the terms of the bill appellant collected $1,104.20 on the notes, $500 upon rent and has foreclosed and now retains all of the property sold and also retains all of said unpaid notes. This is not equity. It is further contended that when a contract provides for a certain sum as liquidated damages for its breach as the contract provides in this case, that is the limit of appellant's recovery, citing *Parker-Washington Co. v. Chicago*, 267 Ill. 136, 140; *Hennessy v. Metzger*, 152 Ill. 505, 514; *Peine v. Weber*, 47 Ill. 41, 47; *Kay Gee Amusement Co. v. Cave*, 177 Ill. App. 250, 254; vol. 17 Corpus Juris, sec. 266, page 966.

In *Parker-Washington Co. v. Chicago, supra,* the whole subject of damages is discussed and the rules of law laid down as follows:

"The law permits parties competent to contract and free to do so, in the exercise of their judgment, to make their own contracts, and the proper function of courts is to enforce such contracts as made, where they

do not conflict with any rule of law or good morals or the declared public policy of the State. When the intention of the parties to a contract is ascertained it is ordinarily the duty of the courts to carry it out (*United States v. Bethlehem Steel Co.*, 205 U. S. 105), and they cannot properly assume a guardianship over those who have the requisite capacity and are free to make such contracts as they may choose. Contracts by which parties who are under no compulsion agree beforehand upon the amount of damages which shall be allowed for a breach are as lawful as any others unless they are inhibited by some rule of law. There is a class of contracts in which stipulations for liquidated damages are not permitted because the law has fixed a definite standard for such damages and an agreement to pay more is necessarily in violation of the law. Those are cases where there is an agreement to pay a certain sum of money, or in default to pay a sum exceeding the lawful rate of interest, as liquidated damages. (*Tiernan v. Hinman*, 16 Ill. 400; 13 Cyc. 101.) That rule was alluded to in *Peine v. Weber*, 47 Ill. 41; and in the case of *Scofield v. Tompkins*, 95 id. 190, where the agreement was held to be for a penalty and not liquidated damages, the contract was to pay $22,770 as the price of land, and also as liquidated damages in case the sum was not promptly paid. Where the agreement does not interfere with any rule of law the intention of the parties, as in all other cases, must govern. Where the intention of the parties is in doubt the courts are inclined to construe the stipulated sum as a penalty, because the theory of the law generally is that compensation shall be the rule and the application of that rule works justice between the parties. (*Iroquois Furnace Co. v. Wilkin Mfg. Co.*, 181 Ill. 582.) In order to determine whether a stipulated sum to be paid for the breach of a contract was intended to be a penalty or liquidated damages,

the court will consider the language used and the subject matter of the contract to ascertain the intention of the parties. The use of the word 'liquidated' does not always determine the question, and in the case of *Iroquois Furnace Co. v. Wilkin Mfg. Co., supra,* the fact that the supplemental contract recited that the purchaser was desirous that the contract should contain a penalty in the nature of stipulated damages was given weight. With respect to the subject matter of the contract, if the provision has reference to uncertain damages and the case shows that serious damage might have been incurred, and no fraud has been used in procuring the contract, the courts cannot interfere and the stipulated sum furnishes the full measure. Generally, the language in which the parties have expressed their intention will control. One matter to be considered is the question whether different acts to be performed are of unequal degrees of importance, some resulting in great damage and others in trifling and inconsiderable loss. In such a case, if a stipulated sum in gross is to be paid for a failure to perform any one of the acts the sum will be construed as a penalty, because it cannot be presumed that the parties intended to satisfy a breach of either condition by the same stipulated sum. (19 Am. & Eng. Ency. of Law, 40; 13 Cyc. 101.) That doctrine does not apply to this case, for the reason that the sum agreed upon as liquidated damages related to the completion of the entire work. Where the damages that will result from a failure to perform the contract are of such a nature that they cannot be definitely ascertained or proved and the parties have stipulated a sum as liquidated damages, there is no reasonable ground for saying that the parties did not intend to fix and define the amount of damages and their agreement will be upheld. These rules are to be gathered from the following decisions: *Peine v. Weber, supra; Poppers v. Meag-*

*her,* 148 Ill. 192; *Gobble v. Linder,* 76 id. 157; *Hennessy v. Metzger,* 152 id. 505; *Westfall v. Albert,* 212 id. 68; *Pinkney v. Weaver,* 216 id. 185; *Western Gas Construction Co. v. Dowagiac Gas and Fuel Co.,* 146 Mich. 119; 10 Ann. Cas. 224.''

Primarily, the damages for failure to pay any note or interest would be the amount of the notes and interest secured upon a foreclosure and deficiency judgment and would not be uncertain in amount. Any failure to pay rent would be the amount of the rent for the term, less the reasonable value of the use of the premises for the remainder of the term, which is susceptible of determination. It may be presumed that the parties in drafting the contract and inserting the clause as to indefinite and uncertain damages, and providing the clause for liquidated damages, had in mind some injury or damage by reason of appellees further engaging in the same business after a default, and therefore in the contract provided for a liquidated damage, in money, calculated to measure the whole financial damage (*Parker-Washington Co. v. Chicago, supra*), and in addition inserted the covenant in question that appellees should not further engage in the same business, not on the ground that such engagement would be a financial damage, already liquidated, but as a penalty or forfeiture to make it more certain that appellees would carry out the terms of the contract.

In the case at bar, without passing upon all of the contentions argued, the contract provided for liquidated damages in case of a breach, which damages appellant has recovered. We are of the opinion that the bill in question is brought solely to enforce a negative clause in the contract to enforce a penalty and forfeiture, and that the chancellor below did not abuse his discretion in dismissing the bill for want of equity.

In the case of *Bondy v. Samuels,* 333 Ill. 535, the court held that a prayer for injunction is addressed to the sound discretion of the court and a decree refusing an

injunction will only be reversed for an abuse of such discretion. In that case, the court said, on page 550; "A prayer for relief by injunction is addressed to the sound discretion of the chancellor and the decree will be reversed only on account of its abuse. (*City of Kewanee v. Otley,* 204 Ill. 402.) An injunction is properly denied where the right of the complainant is doubtful. (*Labadie v. Morris,* 303 Ill. 321.) A mandatory injunction will be refused where the balance of convenience is in favor of the defendant. (*Hill v. Kimball,* 269 Ill. 398; *Dunn v. Youmans,* 224 id. 34.)"

The same rule is recognized in the case of *City of Kewanee v. Otley,* 204 Ill. 402, where it is said: "The granting or refusal to grant an injunction rests in the sound discretion of the trial court, and its action cannot be disturbed in the absence of clear proof of an abuse of such discretion. (*Platt v. Waterbury,* 72 Conn. 531.) As indicated above, we are of the opinion, not only that there has been no abuse of the discretion which the law vests in an equity judge, but that there has been a proper application of equity principles in the case at bar."

For the reasons stated, the decree of the city court of the City of Mattoon, Illinois, is affirmed.

*Affirmed.*